## DUPLICATION OF TELEPHONE SYSTEMS UNDER THE PUBLIC UTILITIES ACT.

Common Pleas Court of Franklin County.

THE SIDNEY TELEPHONE COMPANY v. THE PUBLIC SERVICE COMMISSION OF OHIO.

Decided, May 12, 1913.

*Telephones—Regulation by the Public Service Commission of the Extension of Lines—Utilities Act Does Not Apply to Companies Previously Chartered—Sections 614-52 and 614-69.*

The provision of Section 614-52, denying to a telephone company the right to extend its lines into territory where another company is giving adequate service, unless such company shall first secure from the Public Service Commission after a public hearing a certificate that such extension is necessary for the public convenience, does not apply where such company was chartered and in good faith constructing or operating lines prior to the going into effect of the public utilities act and is only seeking to make extensions within the territorial limits covered by its franchise.

*A. J. Hess,* for plaintiff.

*T. S. Hogan,* Attorney-General, and *J. D. Barnes,* contra.

BIGGER, J.

This action is brought by the plaintiff under and by virtue of Section 614-69 of the General Code, seeking to obtain the vacation of an order of the commission granting to the Farmers Telephone Company a certificate under the provisions of Section 614-52 of the General Code.

It appears from the evidence, that the Sidney Telephone Company was incorporated some years ago and has a central station in the city of Sidney, with lines extending generally throughout the city, and pretty generally throughout the county of Shelby. In 1910 the Farmers Telephone Company was organized and incorporated to do a telephone business in the county of Shelby and adjoining counties, and it has lines in operation in a portion of the city of Sidney, and also covering, to some extent, the

rural sections of the county of Shelby. Its lines are not, however, so extensive as those of the Sidney Telephone Company, which company has telephone connections with certain localities in the county to which the Farmers Telephone does not extend. North of the city of Sidney about eight miles is the village of Anna, in which village the Sidney Telephone Company has an exchange, but the lines of the Farmers Telephone Company do not extend to the village. This was the situation, it appears when the act of May 31st, 1911, was passed and took effect. 102 Ohio Laws, 549.

Section 54 of that act is as follows:

"No telephone company which exercises any permit, right, license or franchise that may have been heretofore granted, but not actually exercised, or that may hereafter be granted to own or operate a plant for the furnishing of any telephone service thereunder, in any municipality or locality, where there is in operation a telephone company furnishing adequate service unless such telephone company first secures from the commission a certificate, after public hearing of all parties interested, that the exercise of such license, permit, right or franchise is proper and necessary for the public convenience."

The Farmers Telephone Company, being desirous of extending its lines to the village of Anna, and also of occupying generally the streets and alleys of the city of Sidney, and of extending its lines throughout the county of Shelby generally as permitted by its articles of incorporation, made application to the Public Service Commission for a certificate permitting it so to do, and this was granted.

It is, in substance, the contention of counsel for the Sidney Telephone Company, as I understand it, that this act of May 31st, 1911, and which by its terms took effect on the 1st day of July, 1911, applies to all telephone companies, whether in existence and with an established plant, at the time the act was passed and took effect, or whether chartered thereafter. It is urged that the object and purpose of Section 54 of that act was to prevent, in the public interest, the duplication of telephone systems, and that this act, properly construed, includes not only those companies afterwards incorporated, but also applies to

those already in existence, and having exercised their right or privilege to own or operate a plant, so as to prevent extensions of their lines in municipalities and localities where there is already a telephone company furnishing adequate service.

This contention, made by the Sidney Telephone Company, as to the proper construction to be given to the provisions of Section 54 of this act presents the first question for consideration in this proceeding:   Do the provisions of Section 54 apply to the Farmers Telephone Company?  If this section does not apply to the Farmers Telephone Company, then the grant of a certificate by the Public Service Commission would confer no right upon the Farmers Telephone Company which it did not possess at the time of the passage of this act, and could not, therefore, violate any right of the Sidney Telephone Company, for it will be conceded that the Farmers Telephone Company had a right, as the law existed prior to the passage of this act, to construct its lines, in any part of the county of Shelby, subject, of course, to certain restrictions as to the mode and manner of such construction in municipal corporations.   If Section 54 does not apply to the Farmers Telephone Company, it had the right to do what the Public Service Commission authorized without any certificate.

The question presented is an important one.   At the time of the passage of this act it is a well known fact that in most of the cities and counties of the state more than one telephone company was in operation.   Certain streets and localities at the time of the passage of the act had one telephone, and not the other.   If the citizens upon such streets and in such localities, having but one telephone, while another is in general use in the same municipality or locality, desire the other telephone, does this act forbid the extension to them of the lines of the other company until such company obtains a certificate from the Public Service Commission upon a showing that such extension is proper and necessary for the public convenience?   Or may such telephone companies, without such certificates, continue to extend their lines within the limits of their franchise as well after as before the passage of this act and unaffected by its provisions?

After a somewhat careful consideration of the provisions of this act, and keeping in mind the object and purpose of the Legislature, and having regard to the language of the statute, and the ordinary rules governing courts in the construction of statutes, I am of opinion that this act has no application to the Farmers Telephone Company and other companies similarly situated.

If the Legislature had intended to include within the provisions of this act the Farmers Telephone Company and others similarly situated, we would expect that different language would have been used.  It will be observed that the language of the statute is that "no telephone company shall exercise any permit, right, license or franchise that may have been heretofore granted, but not actually exercised, to own or operate a plant for the furnishing of telephone service until," etc.  If it had been the legislative intent to prevent the extension of a plant already owned and in operation, we would naturally have expected the Legislature to have provided that the right to own or operate or extend a plant could not have been exercised until, etc.  Or that it would have provided that the act should apply to those companies having a franchise heretofore granted, but not wholly or completely exercised, or words of similar import, indicating that it was to be applied so as to prevent the extensions of plants already in existence.  But the act, in so far as it is made applicable, to companies already having a franchise, applies only to those who have not yet exercised their right to own or operate a plant; it does not provide that it shall apply to those who have not exercised that right fully or completely.  It does not include by its terms any company which has exercised its right or franchise at all.  To apply the provisions of Section 54 to telephone companies which had proceeded under their charter in the exercise of rights and privileges thereby granted, would lead to results which, in my opinion, it was the legislative intention to prevent.

To give it that application would lead to results which would be unjust and inequitable to say the least.

Suppose a telephone company, being granted the rights and privileges which were granted by the charter of the Farmers

Telephone Company had in good faith, and in reliance upon its grant, gone to large expense in the construction of its central station, and before the work of construction had proceeded to that point where its telephone wires and instruments were installed, the act here in question took effect. Was it the legislative intention that its investment should be destroyed or greatly impaired by the provisions of this act? Was it the legislative intention that its securities, whose value must depend upon the exercise of the rights and privileges granted, should be rendered worthless, or their value greatly impaired? A construction which would lead to such results should not be put upon the statute, unless the language plainly requires it.

The Supreme Court of this state in the case of *Kelley* v. *Kelso & Loomis,* 5th O. S., 199, announced this rule of statutory construction which has been frequently cited with approval since:

"Statutes affecting substantial interests and rights of property have a prospective operation only unless the contrary intention clearly appears."

Judge Ranney in that case quotes with approval the language of the court in 1st Denio, 130:

"There is nothing in the statute under consideration which, either in terms, or by necessary implication makes it applicable to the case in hand. And we ought, in decency, to conclude that the Legislature did not intend it should have the retrospective and unjust effect which is claimed for it by the plaintiff."

Of course, it is true that, except as restrained by the federal and state constitutions, the Legislature may enact statutes having a retrospective operation, but they are not to be so construed unless such intention clearly appears. And this is especially true where such a construction would work injustice.

While this Section 54 is given a retrospective operation it is but very limited in extent, and under the rule stated, is not to be extended unless by necessary implication. To apply it to those companies which had in good faith exercised their right to own and operate a plant, so as to prevent them from making extensions of that plant after the passage of the act would be clearly

to extend it by implication, which is not necessary in this case. It is apparent that the language of this statute was carefully chosen. It is not the province of the court to add provisions to it which were not put there by the Legislature and which it seems clear from the carefully chosen language were not intended to be there.

Counsel for the Sidney Telephone Company lays great stress upon what is claimed to be the clearly announced policy of the state in this section, namely, to prevent duplication of telephone plants in the same municipality or locality in the interest of the subscribing public. It is argued that it is the duty of the court to give effect to this object and purpose of the Legislature. The object and purpose of the Legislature should be given effect and it is given effect when the statute is applied in accordance with its plain terms to those corporations organized after the act and those organized before but not having yet exercised their privilege or franchise to own or operate a plant. All such corporations before exercising their grant or franchise in any municipality or locality where there is a telephone company rendering adequate service must apply for and obtain the certificate provided for by this act. But where a company had obtained its franchise before this act took effect, and had exercised that franchise by establishing a plant, it is plainly not within the express terms, and in my opinion not within the object and purpose of the law. Such a public utility as a telephone or gas or water works is sometimes denominated a natural monopoly. Where such public utilities are duplicated the cost of such duplication must necessarily be borne by the subscribing public. It may be doubtful whether this principle is so clearly applicable to a telephone company as to a gas plant or water works, as it is admitted by counsel for plaintiff that as the number of subscribers or users increases, the relative cost increases, so that the point may be reached where the cost to the subscriber of two telephones may be offset largely or wholly by the increased cost due to the great number of users of the single telephone. But it may be conceded that there are other disadvantages to the subscribing public in the use of two telephones in the same mu-

nicipality or locality which it was the legislative intention to prevent or restrict.   Admitting that it will be to the advantage of the subscribing public to prevent the establishment of two telephones, and that this was the object and purpose of this enactment, the reason for this fails, where the two have already been used.   The inhabitants of the county of Shelby are, as in every other county, closely connected together for business and social purposes.   No business man in any city where there are two telephones regards himself as wholly equipped for business unless he has both telephones.   The same is true as to the villages and rural communities in a county which are intimately connected as a rule with the county seat.   The one telephone is or may be as necessary as the other, and it is not apparent how the public are to be benefitted by denying to them the advantages to be derived from connection with all the telephone users of the county.   The advantages would be apparent provided there was but one company and all users are compelled to use the single telephone.   But this end can only be attained where the grant or franchise of the second company has not yet been exercised.

As already stated, statutes may be made retrospective in their operation, unless such operation will bring them into conflict with the federal or state Constitution.   The nature and extent of the limitations upon the legislative branch of the government under the reserve power conferred by the Constitution to amend and repeal laws under which corporations are granted their franchises, is not very clearly established as yet.   The reserve power to repeal has seldom been exercised; that to amend by imposing additional requirements which are in effect an amendment of the franchise more frequently.   It has been apparently now settled that notwithstanding this reserve power the Legislature, in its exercise, is also controlled by that other co-ordinate constitutional provision of the inviolability of private property and that amendments can not be made which, in their effect, amount to a confiscation of property or the destruction or impairment of vested rights.   This has been most frequently decided where, under this reserve power, it has been sought to im-

pose amendments upon corporate charters by changing the rates of fare upon railroads, and it is now settled that rates can not be made so low as to amount to confiscation of property. Just how that principle of limitation upon this reserve power is to be distinguished from the case of a telephone company which, in good faith, has established a plant, but has not reached a point in the extension of its system which will yield it sufficient revenue to enable it to successfully conduct its business, it is not easy to understand. Of course, I do not mean to say that the Farmers Telephone Company has not extended its system so that it is remunerative, but if the statute is to be given this construction, such results are likely to follow, and it should not be so construed as to lead to such result unless the language plainly requires it. Of course, if the statute here in question is to be construed as contended for by the Sidney Telephone Company, it clearly amounts to a change and amendment of its corporate grant which entitled it to construct its lines generally throughout the county of Shelby.

I do not deem it necessary however to enter upon a discussion of the question of the constitutional right of the Legislature to make such an act apply to the Farmers Telephone Company and others similarly situated, but only mention it in passing as presenting a question of probable constitutional difficulty, if the act is to be construed as contended for by the Sidney Telephone Company.

I am also of opinion that even if the act should be construed to apply to the Farmers Telephone Company, that it is not at all apparent that the Public Service Commission acted unreasonably in granting the certificate, and that upon the grounds already stated. The public convenience manifestly does not mean the convenience of every member of the public, because many do not use and probably never will become users of a telephone. But if any considerable number of the members of a community, having but one telephone, but closely connected for social and business purposes with another community which has two or more, desire to have those which have not yet been extended to them, I am not able to say that the finding by the

Public Service Commission, that it is proper and necessary for the public convenience that it or they be so extended, is unreasonable.

For the above reasons the conclusion is reached that the plaintiff is not entitled to the relief prayed for, and the petition is dismissed at the costs of the plaintiff.